```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
AGFA GEVAERT AG, AGFA CORPORATION,    :
and FORTIS INSURANCE COMPANY, N.V.,   :
                                      :    OPINION and ORDER
              Plaintiffs,             :
                                      :
     -against-                        :    04 Civ. 4202(JFK)
                                      :
TMM LINES LIMITED, LLC, CP SHIPS, and :
HAPAG-LLOYD CONTAINER LINE GmbH,      :
                                      :
              Defendants.             :
-------------------------------------X
ALLIANZ MARINE & AVIATION (FRANCE),   :
a/s/o RHOVYL, S.A.,                   :
                                      :
              Plaintiff,              :
                                      :
     -against-                        :    04 Civ. 7100(JFK)
                                      :
LYKES LINES LIMITED, L.L.C.  and      :
MAERSK NORFOLK, her engines,          :
tackle, boilers, etc., in rem,        :
                                      :
              Defendants.             :
-------------------------------------X
```

APPEARANCES:

For Plaintiffs Agfa Gevaert AG, Agfa Corporation, and
    Fortis Insurance Company, N.V.:
        SHEINBAUM, BENNETT, GIULIANO & McDONNELL, LLP
        225 West 34th Street, Suite 402
        New York, New York 10122
        Of Counsel: Nicholas Giuliano, Esq.
                    Timothy J. McDonnell, Esq.

For Plaintiff Allianz Marine & Aviation (France):
        COZEN O'CONNOR
        45 Broadway, 16th Floor
        New York, New York 10006
        Of Counsel: Christopher Raleigh, Esq.

```
For Defendants TMM Lines Limited, LLC, CP Ships, and
    Lykes Lines Limited, L.L.C.
        DeORCHIS & PARTNERS, LLP
        61 Broadway, 26th Floor
        New York, New York 10006
        Of Counsel: Christopher H. Mansuy, Esq.
                    Richard Branca, Esq.

For Defendant Hapag-Lloyd Container Line GmbH
        HILL, BETTS & NASH LLP
        One World Financial Center
        200 Liberty Street, 26th Floor
        New York, New York 10281
        Of Counsel: Michael J. Ryan, Esq.
```

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN**, United States District Judge:

## INTRODUCTION

Plaintiffs have commenced separate maritime actions against Defendants for negligence and breach of contract arising out of the loss at sea of containers containing photographic materials and polyvinyl chloride. Defendants now seek partial summary judgment limiting their liability to $500 per package. Defendants contend that only 35 packages of photographic materials and 16 packages of polyvinyl chloride were lost. The plaintiffs who filed suit for the loss of the photographic materials cross-move for summary judgment declaring that 567 packages were lost, and that liability should not be limited in any event because the defendants committed an unreasonable "quasi-deviation." The polyvinyl-chloride plaintiffs oppose the defendants' motions but do not cross-move for relief. For the following reasons, all of the motions are denied.

## THE PARTIES

Plaintiffs Agfa Gevaert AG and Agfa Corporation were the owners and shippers of the lost photographic materials. (Giuliano Decl. ¶ 2). Plaintiff Fortis Insurance Company, N.V. was the lead insurer of these materials. (Agfa Compl. ¶ 4). For the purposes of these motions, these three plaintiffs are collectively referred to as "Agfa." Plaintiff Allianz Marine & Aviation (France) has filed suit as the subrogated underwriter of

3

Rhovyl, S.A. ("Rhovyl"), the owner and shipper of the lost polyvinyl chloride. (Allianz Compl. ¶¶ 2-3). For the purposes of these motions, these two plaintiffs are referred to as "Allianz."

Defendants TMM Lines Limited, LLC ("TMM") and Lykes Lines Limited, L.L.C. ("Lykes") are subsidiaries of Defendant CP Ships. (Jones Decl. ¶ 1). TMM entered into a bill of lading contract with Agfa concerning the carriage of the photographic materials; Lykes entered a bill of lading contract with Allianz concerning the carriage of the polyvinyl chloride. (TMM Rule 56.1 Stmt., Exhs. A & B). Defendant Hapag-Lloyd Container Line Gmbh ("Hapag") was the time charterer of the M/V Maersk Norfolk ("Norfolk") for the voyage at issue. (Godemann Aff. at 2). Hapag made space available aboard the Norfolk for TMM and Lykes containers pursuant to an Operational Implementing Agreement and Cross-Charter Party with TMM and Lykes. (Id. at 2, Exh. A).

TMM, CP (defendants in the Agfa action) and Lykes (defendant in the Allianz action) are represented by the same counsel. By Memo-Endorsed Order dated October 5, 2004, the Court consolidated the two actions for the purposes of the TMM, CP and Lykes motion for partial summary judgment. Hapag (defendant in the Agfa action) has other counsel and has filed its own motion for partial summary judgment with essentially the same arguments. Agfa has cross-moved for summary judgment; Allianz has not.

4

**FACTUAL BACKGROUND**

On March 3, 2003, at the Port of Rotterdam, Agfa's container of photographic materials and Allianz's container of polyvinyl chloride were placed aboard the Norfolk. The next day, the Norfolk left the Port of Southhampton, its last European port of call, for a transatlantic voyage to the Port of New York. During the journey, the mighty Neptune raised a storm and claimed as booty several of the Norfolk's containers, including Agfa's container of photographic materials and Allianz's container of polyvinyl chloride.

The Agfa and Allianz bills of lading are essentially identical. Under the column headed "DESCRIPTION OF PACKAGES AND GOODS" in the Agfa bill of lading, the breakdown of the shipment is as follows:

```
Order 8042217H2: 348 Karton on 13 Euro-Palette
                  12 Karton on 1 Euro-Palette

Order 7544511H3:  17 Karton on 1 Euro-Palette

Order 8051133B2:  11 Bulk-Palette on 5 Palette

Order 7549536L3:  60 Karton on 4 Palette

Order 7511401D3:  60 Karton on 2 Pallets

Order 7567407I3:   6 Karton

Order 7569453C3:  15 Karton on 1 Euro-Palette
                   7 Karton on 1 Euro-Palette

Order 7535091E3:  27 Karton on 1 Euro-Palette
```

(TMM Rule 56.1 Stmt., Exh. A).  On the last page of the bill of lading appears the entry: "35 SSC/NVE SHIPPED ON BOARD FREIGHT PREPAID 567 CARTON(S)." (Id.).[1]  On the Allianz bill of lading, the relevant descriptions of the shipment are "80 BALES ON 16 PALLETS POLYVINYL CHLORIDE FIBER" and "80 UNIT(S)." (Id., Exh. B).  Both bills contain the number "1" in the column headed "NO. OF PACKAGES."  In both cases, this entry signifies that one container housed the pallets and cartons.  Neither Agfa nor Allianz declared the value of their goods on the faces of their respective bills of lading. (Rule 56.1 Stmts. ¶¶ 8, 11).

The last page of each bill of lading sets out terms and conditions of the carriage in a manner that gives new meaning to the term "fine print."  An electron microscope reveals the following relevant language:

> 5(a)(2). [I]n the event that this Bill of Lading covers shipments to or from the United States of America, then the Carriage of Goods by Sea Act of the United States ("COGSA") shall be compulsorily applicable . . . .
>
> 11(a).  Goods, including Goods packed in Containers by the Carrier or Merchant, may be carried on deck without notice to the Merchant.  Goods, other than livestock, stowed in any covered-in-space, or packed in a Container carrier on deck shall be deemed to be stowed under deck

---

[1] Agfa relies on the "567 CARTON(S)" figure in its bill of lading. (See, e.g., Giuliano Decl. ¶ 5).  According to the Court's calculations, the number of cartons in the 8 Agfa "Orders" was 563, not 567.  In addition, 11 of the 563 cartons were actually "bulk-palettes," not "kartons." (Order 8051133B2). The discrepancies are not material to the resolution of the instant motions.

6

> for all purposes including, where applicable, COGSA and the Hague Rules.
>
> 18(b). In no event shall the carrier be liable for loss or damage to or in connection with the Goods in an amount exceeding US $2.50 per kilo, or US $500 per Package or per shipping unit where the Goods are not shipped in Packages. If such limitation is inapplicable under the local law in which an action is brought, then the Hague Rules (Unamended) limitation of £100 sterling lawful money of the United Kingdom per package or shipping unit shall apply, or alternatively, if the shipment covered by this Bill of Lading originates in a country where the Hague-Visby Amendments to the Hague Rules are mandatorily applicable, Carriers [sic] liability shall not exceed 2 SDR per kilo or 666.67 SDR per Package or shipping unit whichever the greater.

(TMM Rule 56.1 Stmt., Exhs. A & B). The $500 per package limitation of liability in Section 18(b) is identical to that of the Carriage of Goods by Sea Act ("COGSA") in cases where the shipper has not declared the nature value of the goods in the bill of lading. See 46 U.S.C. App. § 1304(5).

Defendants TMM and CP Ships seek partial summary judgment limiting their liability for the loss of Agfa's photographic materials to $17,500. They claim that "$500 per Package" limitation specified in Section 18(b) and COGSA applies because Agfa did not declare the value of the materials in the bill of lading. (TMM Br. at 2, 5-6).[2] They also claim that Agfa had only 35 "packages" onboard the Norfolk (29 pallets and 6 loose cartons). (Id. at 9). Defendant Hapag moves for the same

---

[2] The briefs submitted by TMM, CP and Lykes are cited in this Opinion as "TMM Br." or "TMM Reply Br."

7

relief, citing a "Himalaya Clause" in the Agfa-TMM bill of lading. (Hapag Br. at 3-6).[3] Defendant Lykes seeks partial summary judgment limiting its liability for the loss of Allianz's polyvinyl chloride to $8000 ($500 x 16 pallets). (TMM Br. at 3, 6).

Agfa cross-moves for summary judgment declaring that the $500 per package limit is not applicable because the defendants committed an unreasonable "quasi-deviation" by stowing the lost containers on deck instead of below deck. (Agfa Br. at 5-10). Alternatively, if the Court determines that the $500 limitation applies, Agfa moves for summary judgment declaring that the correct number of "packages" is 567, not 35. (Id. at 10-12). Agfa's cross-motion does not seek a judgment with respect to the defendants' liability.

Allianz opposes Lykes's motion for partial summary judgment without a cross-motion. Allianz contends that if the $500 COGSA limitation applies, there were 80 "packages" onboard the Norfolk, not 16. (Allianz Br. at 3-4). Liability therefore would be $40,000, not $8000. Alternatively, Allianz urges that if the number of packages is found to be 16, then the $2.50 per

---

[3] Section 4(b) provides: "Without prejudice to the aforesaid, every servant, agent and Sub-contractor shall have the benefit of all provisions herein benefitting the Carrier as if such provisions were expressly for their benefit . . . ." The name "Himalaya Clause" derives from Adler v. Dickson, [1955] 1 Q.B. 158 (Eng. C.A. 1954), a case involving the vessel Himalaya.

8

kilo limitation in Section 18(b) of the bill of lading should apply. (Id. at 5). This calculation would result in liability of $40,007.50. Allianz also reiterates Agfa's argument that the defendants committed a material quasi-deviation by storing the lost containers on deck and not below deck. (Id. at 6).

## DISCUSSION

### I. LEGAL STANDARDS

A. Summary Judgment

The Court may grant a motion for summary judgment under Rule 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Delaware and Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. A genuine issue of fact arises if the non-moving party "present[s] evidence from which a jury might return a verdict in his favor." Id. at 257.

B.  <u>The Carriage of Goods by Sea Act</u>

Under Section 5(b) of the bills of lading, COGSA is "compulsory applicable" to the shipments at issue. The statute addresses two concepts central to these motions: deviation and limitation of liability. On deviation, COGSA provides:

> Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: <u>Provided, however</u>, That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable.

46 U.S.C. App. § 1304(4). COGSA also contains a provision addressing limitation of carrier liability:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit . . ., unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. . . .
>
> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: <u>Provided</u>, That such maximum shall not be less than the figure above named.

<u>Id.</u> § 1304(5). Section 18(b) of the Agfa/Allianz bills of lading essentially tracks the $500 per package limitation of liability in the first paragraph of Section 1304(5) of COGSA.

## II. MOTIONS FOR PARTIAL SUMMARY JUDGMENT

A. <u>Whether Section 18(b) is Ambiguous</u>

The Court first addresses whether partial summary judgment limiting Lykes's liability to $500 per package is warranted. Allianz accepts the $500 per package limitation as long as the count is 80 packages ($40,000 liability). Allianz points out, however, that Section 18(b) of the bill of lading contains an alternate formula for computing liability: $2.50 per kilo. If there are only 16 packages, as Lykes contends, Allianz wants to apply the $2.50 per kilo formula ($40,007.50 liability). Allianz contends that the limitation of liability in Section 18(b) to "US $2.50 per kilo or US $500 per package" is ambiguous and should be construed in its favor and against Lykes.[4]

The carrier is not entitled to limit liability below the actual loss sustained without notice to the shipper. "[O]nly by granting its customers a fair opportunity to choose between higher and lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." <u>New York, N.H. and Hartford R. Co. v. Nothnagle</u>, 346 U.S. 128, 135 (1953). The carrier must make a prima facie showing under the bill of lading that notice of the limitation was given to the shipper. <u>See</u>

---

[4] Agfa does not advance this argument in opposition to the defendants' motions, or in support of its own cross-motion.

11

General Electric Co. v. M/V Nedlloyd, 817 F.2d 1022, 1029 (2d Cir. 1987). If the carrier succeeds, the burden shifts to the shipper to show that fair opportunity did not exist. Id.

Section 18(b) of the bill of lading states that "[i]n no event shall the Carrier be liable for loss or damage . . . in an amount exceeding US $2.50 per kilo, or US $500 per package." This particular sentence does not contain a phrase "whichever is greater" or "whichever is lesser." Later in Section 18(b), liability is limited under Hague-Visby to "2 SDR per kilo or 666.67 SDR per Package or shipping unit whichever is greater."[5] TMM contends that the $2.50 per kilo limitation "was an effort to express the Hague-Visby limitation of liability of two special drawing rights [2 SDR]" and that "the $500 per package limitation comes from the language in § 1304(5) of COGSA." (Jones Decl. ¶ 9). In other words, only the $500 per package limitation applies where, as here, COGSA applies. Allianz argues that either formula could apply in this case. The suggestion is that the phrase "whichever is greater" should be understood to follow "US $2.50 per kilo, or US $500 per package."

---

[5] The Court takes judicial notice that "SDR" stands for "Special Drawing Right," a currency created by the International Monetary Fund (IMF). The value of the SDR is calculated based on specific amounts of the U.S. dollar, pound sterling, euro and Japanese yen. See www.imf.org/external/np/exr/facts/sdr.htm. The Court may consider any fact subject to judicial notice when deciding a motion for summary judgment. Fed. Election Comm'n v. Hall-Tyner Election Campaign Comm., 524 F. Supp. 955, 959 n.7 (S.D.N.Y. 1981), aff'd, 678 F.2d 416 (2d Cir. 1982).

12

The problem with Lykes's position is that Section 18(b) clearly sets out the Hague-Visby formula: "2 SDR per kilo or 666.67 SDR per Package . . . whichever is greater." There is no evidence in the record that US $2.50 per kilo was equivalent to 2 SDR at the time of contracting. Furthermore, Lykes's reading, while plausible, injects uncertainty into Section 18(b)'s Hague-Visby scheme. Under Lykes's approach, a Hague-Visby claimant would be entitled to 2 SDR per kilo or 666.67 SDR per Package, whichever is greater, <u>or</u> $2.50 per kilo, but not $500 per Package. This interpretation muddies the paragraph structure of Section 18(b), which progresses neatly from U.S. dollars ($2.50 per kilo or $500 per package) to pounds sterling (Hague Rules - £100 per package) to SDR (Hague-Visby - 2 SDR per kilo or 666.67 SDR per package).

Where, as here, the shipper does not declare the value of its goods on the bill of lading, the $500 COGSA ceiling kicks in. 46 U.S.C. App. § 1304(5). The statute is clear, however, that the parties may agree to raise that ceiling. <u>Id.</u>; <u>see</u> <u>Daval Steel Prods. v. M/V Acadia Forest</u>, 683 F. Supp. 444, 447 (S.D.N.Y 1988) (Mukasey, J.). The Court cannot say for certain whether the parties intended to do so when they agreed to the $2.50 per kilo formula in Section 18(b). The other provisions of the bill of lading do not resolve the problem, nor does any other evidence submitted on these motions. As ambiguities in the bill of lading

13

generally must be construed against the carrier, <u>Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro</u>, 775 F.2d 476, 486 (2d Cir. 1985), Lykes is not entitled to summary judgment limiting its liability to Allianz to $500 per package.

B.  <u>Definition of "Package"</u>

The defendants contend that the Court should grant partial summary judgment declaring that Agfa placed only 35 "packages" in their container (29 pallets plus 6 loose cartons), and Allianz only 16 packages in theirs (16 pallets). Agfa asks the Court to deny the defendants' motion and grant it summary judgment declaring that there were 567 packages in the container, corresponding to the total number of cartons. Allianz urges a finding of 80 "packages," corresponding to the number of bales on the 16 pallets, but will accept a finding of 16 "packages" if it can apply the $2.50 per kilo formula instead of $500 per package.

It is settled that "[t]he question of what constitutes a COGSA package . . . is largely and in the first instance a matter of contract interpretation." <u>Allied Chemical</u>, 775 F.2d at 485. The first step for the Court is to begin with the use of the term "package" in the bill of lading. <u>Seguros Illimani S.A. v. M/V Popi P</u>, 929 F.2d 89, 94 (2d Cir. 1991). Here, the column in both bills of lading headed "NO. OF PKGS." contains the number "1," which clearly denotes containers. No one attempts to argue that Agfa and Allianz shipped only one "package" each.

14

Not having found an answer in the "packages" column, the Court looks elsewhere in the bill of lading for the parties' intentions. Seguros, 929 F.2d at 94. In the Agfa bill of lading, under "DESCRIPTION OF PACKAGES AND GOODS," the typical descriptions are "348 KARTON on 13 EURO-PALETTE," or "11 BULK-PALETTE ON 5 PALLETE [sic]" or simply "6 KARTON." In the Allianz bill, the descriptions are "80 BALES ON 16 PALLETS" and "80 UNIT(S)." This language does not clearly indicate the parties' intent. See Royal Insurance Co. of America ex rel. Warner Lambert Co. v. M/V MSC Dymphna, No. 01 Civ. 9164(PKL), 2004 WL 369268 (S.D.N.Y. Feb. 27, 2004) (Leisure, J.). Section 1(i) of the bill of lading states that pallets can be packages: "Package: includes Container, flat rack, van, trailer, pallet, tank, or skid. Vehicles, yachts and machinery shall be deemed to be packages." While this fact leans in favor of the defendants, Section 1(i) does not compel the conclusion that a "karton" can never be a package. The evidence outside the bills of lading also does not conclusively establish the definition of "package" one way or the other. (See Ryan Decl., Exh. B; Jones Decl., Exh. C). In the Agfa Transport Instruction, Agfa listed "35 SSC/NVE" in Box #6, entitled "Packages," which parrots the Bill of Lading. (Bathrellos Stmt., Exh. A). Accompanying the Instruction, however, is a list of the 563 "kartons," as on the Bill of Lading. (See supra, p. 6, n.1). While the Court believes that

15

this evidence also leans in the defendants' favor, the mention of both packages and cartons precludes a grant of summary judgment.

In Dymhna, on very similar facts, Judge Leisure denied motions for summary judgment. It is notable that Plaintiff Agfa and Defendant Hapag both mention Dymphna, but neither party attempts to distinguish it. (Agfa Br. at 11; Hapag Reply Br. at 6). DCI Mgmt. Group, Inc. v. M.V. Miden Agen, No. 03 Civ. 418(DLC), 2004 WL 1078667 (S.D.N.Y. May 14, 2004), cited in the defendants' briefs for its holding that a pallet can be a package, is distinguishable. In DCI, Judge Cote found that the shipper packed the cartons onto the pallets and wrapped each pallet in plastic. Id. at *4. Judge Cote also noted that the shipper's CEO sent a fax that described the shipment as eight pallets but did not mention cartons. Id. Given these facts, Judge Cote found that the shipper intended that the pallets be considered packages.[6] The defendants do not call the Court's attention to analogous facts in this case. (See TMM Br. at 6-9; Hapag Br. at 3-4). Accordingly, the Court denies summary judgment to both defendants and plaintiffs on the package issue.

---

[6] Hapag argues that the plaintiffs admitted the following statement in Hapag's Local Rule 56.1 Statement by failing to directly respond to it: "2. The shipper AGFA Gevaert AG designated the shipment as being comprised of 35 packages." This argument elevates form over substance. The number of packages is the central dispute in these motions. In any event, Hapag's statement #2 itself violates Rule 56.1(d), which provides that "each statement of material fact . . . must be followed by citation to evidence which would be admissible . . . ."

16

C.  Unreasonable Quasi-Deviation

Agfa cross-moves for summary judgment declaring that the defendants cannot limit their liability because they committed an unreasonable quasi-deviation by stowing the containers on the Norfolk's deck instead of below deck. "Under the general maritime law, a vessel is said to 'deviate' when it leaves its planned or customary course or itinerary." SNC S.L.B. v. M/V Newark Bay, 111 F.3d 243, 247 (2d Cir. 1997). Unauthorized on-deck stowage is a "quasi-deviation." Sedco, Inc. v. S.S. Strathewe, 800 F.2d 27, 31 (2d Cir. 1986).[7]  In an oft-cited decision, Judge Weinfeld held that the $500 per package COGSA limitation does not apply in the event of the carrier's unreasonable deviation. Jones v. The Flying Clipper, 116 F. Supp. 386, 391 (S.D.N.Y. 1953). The Court of Appeals for the Second Circuit repeatedly has rebuffed invitations to abandon the Flying Clipper rule. See, e.g., M/V Newark Bay, 111 F.3d at 250 (2d Cir. 1997); Gen. Elec. Co. Int'l Sales Div. v. S.S. Nancy Lykes, 706 F.2d 80, 87-88 (2d Cir. 1983).

Agfa contends that its logistics representative instructed TMM that "the container must unconditionally be stored

---

[7] The Court of Appeals for the Second Circuit has cautioned that "the principle of quasi-deviation is arguably inconsistent with COGSA," and that "deviation" should not be extended beyond unauthorized geographic deviation and unauthorized on-deck stowage. See S.S. Strathewe, 800 F.2d at 32.

17

below deck." (Bathrellos Stmt. ¶ 5).[8] Defendant Hapag contends that Agfa's representative says nothing about sending the instruction to Hapag. (Hapag Reply Br. at 2-3). TMM's counters Agfa's logistics representative with a booking supervisor, who avers that TMM's policy is "to decline such requests simply because they cannot be guaranteed." (Wouters Decl. ¶ 3). CP Ships's Antwerp customer services manager echoes this statement. (Schrauwen Decl. ¶¶ 4-5). The parties also dispute whether there was enough room on the Norfolk for below-deck storage of the containers. (Giuliano Decl. ¶ 7; Bathrellos Supp. Decl. ¶ 2). Finally, Section 11(a) of the bill of lading undercuts Agfa's position: "Goods, including Goods packed in Containers by the Carrier or Merchant, may be carried on deck without notice to the Merchant." Given the obvious factual disputes, summary judgment for Agfa on the issue of deviation is inappropriate.

## CONCLUSION

In light of the foregoing, TMM, CP Ships and Lykes's motion for partial summary judgment is denied. Hapag's motion for partial summary judgment is denied. Agfa's cross-motion for summary judgment is denied. The parties are referred to Magistrate Judge Ellis, who shall fix a discovery schedule. Discovery will be completed no later than January 6, 2006. The

---

[8] The Transport Instruction states: "CONTAINER UNBEDINGT UNTER DECK VERLADEN." (Bathrellos Stmt., Exh. A). Defendants do not challenge Mr. Bathrellos's English translation of this line.

18

parties are directed to appear for a conference before the undersigned on January 9, 2006 at 10:00 a.m. in the United States Courthouse, 500 Pearl Street, Courtroom 20C.

SO ORDERED.

Dated: New York, New York
August 2,5, 2005

_____
JOHN F. KEENAN
United States District Judge